The Administrative Law Judge made a finding that Ms. Fleming did not suffer from what is a severe mental impairment. Naturally, the Commissioner stands by this finding of non-severity. The Commissioner argues in its brief that there's no evidence of a mental impairment. It underscores that fact in its brief. Yet the very evidence cited by the Commissioner to supposedly support this finding says much to the contrary. I'd like to cite three examples to the Court. Number one, Dr. Maloof performed a consultative examination at the request of the State of California on behalf of the Commissioner. He rendered an Axis I diagnosis of pain associated with both psychological factors and a general medical condition. Likewise, Dr. Feinberg, who examined Ms. Fleming in conjunction with her workers' compensation claim, gave the same diagnosis as part of his diagnoses. He said that she suffered from a chronic pain syndrome with psychological factors affecting her physical condition. Was there ever a finding of disability by either of those physicians? Judge Rawlingson, Dr. Feinberg said that it was clear to him that, number one, she suffered from a serious psychological impairment. He did not, however, say that she was disabled or not disabled. He simply concluded that there was a serious psychological impairment. Wasn't there a mental health referral after that? She never actually started receiving psychological psychiatric treatment. But wasn't there a referral to the purpose of determining whether or not there was a mental disability? There's reference made in his report, yet none was ever done, at least as far as I know, in conjunction with the workers' compensation case. After that period of time, there was a psychological evaluation done. So these two doctors that you're referring to were those that were done in conjunction with her workers' compensation claim? Dr. Maloof saw her in conjunction with her Social Security case at the request of the Commissioner. Dr. Feinberg saw her in conjunction with the workers' compensation case. But didn't Dr. Maloof indicate that she really wasn't prevented from working by whatever it was? It wasn't going to affect her working? That's what the Commissioner has argued, Your Honor, and we know what Dr. Maloof said. I don't believe so. I believe Dr. Maloof said that, number one, she could understand simple one-to-two-step instructions for intervals of two hours. He also said that she could understand complex instructions. However -- Well, doesn't that medical source statement of ability to do work, doesn't that come from him, too, or am I wrong? It does, and yet it contradicts -- And did he not say that whatever he said in the earlier thing, he's being doctorish, but the bottom line was that it wasn't going to affect her working. She could work. Isn't that what he said? I don't read it that way, Your Honor, and this is the reason why. Number one, the checklist form that he completed clearly contradicts his narrative. In his narrative, he specifically said at the end he didn't know whether or not she could withstand the pressures of working an eight-hour day. But he said, you know, does she have a problem with remembering, carrying out instructions? Nope. Does she have a problem to respond appropriately to supervision and coworkers and work pressures affected by the impairment? Nope. Are there any capabilities affected by the impairment? Nope. That's what he said. Well, again, I'm focusing, Your Honor, on that one sentence where he said she may have difficulty withstanding the pressures of work. I know where you're focusing, and that's where I'm focusing. So at the end, they say, listen, summarize, tell us your bottom line, and that's what he says. Well, then there's the question of whether or not we're going to accept his narrative comments or whether we're going to accept his checklist form. There's clearly a conflict between the two. Well, and so if the ALJ accepted his bottom line comment, that's not a problem, what's wrong with that? Well, it's inconsistent with Day v. Weinberger. In Day v. Weinberger, this Court said we can't isolate simply that evidence that favors non-disability. We have to read the record as a whole. And that's what I'm encouraging the Court to do. Of course you can't isolate it, but also we're not here to rebalance all the evidence as a whole in that sense. Of course we can't isolate it. I understand that, sir. I mean, I understand what you're saying. Of course we can't pick and choose. But, you know, a trier of fact has to somehow pick and choose. People say lots of things in a trial, and the trier has to decide what seems to fit the picture best. And, Your Honor, I think within the context of Dr. Maloof's opinion, if we were to assume that his bottom line, as you say, did in fact conclude that she could indeed work, the question is, what weight do we give Dr. Maloof's report? Dr. Maloof saw her once. Dr. Maloof saw her at the request of the Commissioner. This Court has spoken time and time again as to the weight to be given the opinions of various physicians. And in the pecking order, the report of a proverbial one-shot doctor paid by the Commissioner, the weight that we give that report has to be tempered against other reports. Now, clearly, the other reports of record, just in terms of their length, were much more copious. Dr. Maloof, quite frankly, to a large degree, his opinion, if we do read it the way that you're suggesting, Your Honor, stands out pretty much like an island. Other reports say the same thing. I thought you were sending us to Dr. Maloof. I'm sorry? I thought you were sending us to Dr. Maloof, that one doctor says, you know, we ought to have an evaluation. And one doctor says, yep, I've evaluated her, and this is my bottom line. Dr. Maloof was not the one who was the result of her being evaluated. I understand. He simply saw her in conjunction with her claim for Social Security benefits. I understand. The last report I wanted to refer to was a report from Dr. Morgenthaler. He conducted psychological tests, and his Axis I diagnosis was that of a somatoform disorder. He, to some degree, explained why she wasn't being treated. He said that she repressed her feelings and that she really hadn't come to the grips to come to grips with the fact that she suffered from a significant depression. Now, a somatoform disorder is a listed impairment recognized by the Commissioner. A somatoform disorder under Paragraph 12 of the listing of impairments can provide the basis for disability. We're not suggesting that the medical evidence in and of itself says that the Court or that the administrative law judge should have found her disabled by virtue of her mental impairment. What we are suggesting, Your Honors, is this, that that is a distinct difference from somebody saying there's no mental impairment whatsoever. Under this Court's holding in Gutierrez, the administrative law judge had a fundamental requirement once a mental impairment had, in fact, been displayed to proceed with the various criteria and the various steps that should be undertaken in assessing a mental impairment. He simply did not do that. He concluded that there was no severe mental impairment, and, therefore, he never went on to go through the rest of the process to determine whether or not she could do various different things. That's why we think there was error. I'll reserve the balance of my time. Thank you very much.  Thank you. Good morning. My name is John Cusker. I represent the appellee Joanne Barthard, Commissioner of Social Security. I'd like to address for the Court the general issue of the ALJ's evaluation of the medical evidence, including the new arguments that were raised in Appellant's reply brief. I think the principal touchstone for analysis in this case is the Magellanes case that this Court decided in 1989. Magellanes gives us three principles in order to consider what happened in this case. First, the Court said that it's not necessary for an ALJ to believe everything that a doctor says in order to find that that doctor's opinion is substantial evidence. Secondly, Magellanes tells us that an ALJ need not recite magic words in order to find a medical source's opinion not believable. And then, finally, Magellanes tells us that the Court may draw specific and legitimate inferences from an ALJ's opinion. And that, I'll point out, is the same standard that's required for evaluating medical evidence. Relating that, those three principles of analysis, the evidence in this case, we have Dr. Malouf's narrative report and Dr. Malouf's checkoff form. The checkoff form clearly supports the ALJ's conclusion that the claimant had no mental impairment. The opposing counsel argues that there's some doubt here, but I think the Court should correctly find that it was the ALJ's obligation to evaluate the evidence in this case and to make findings and reach a conclusion. That's what the ALJ did here. One of the difficulties I have with the decision of the ALJ is his conclusion that her complaints of fibromyalgia are not supported by MRI scan and EMG studies, yet those are not used to diagnose fibromyalgia. I'm looking at the view, if you need a page citation, it's the top of 157 in the ER, but I'm just reading from the ALJ's decision. That's to say, it seems to me that he's not properly understood what's appropriate for a diagnosis for fibromyalgia. Let me say that fibromyalgia arose fairly late in both the medical evidence here and I believe also in the ALJ's decision-making. As I read this, what the ALJ found was that the fibromyalgia complaints, which were diagnosed rather late in the process, didn't establish an impairment that met the 12-month duration requirement. The first mention of it comes up in Dr. Johnson's report. Now, as I read Dr. Johnson's report, his definition of fibromyalgia is quite unlike the one that I'm familiar with from the Rowan and Sarchett line of cases. The only other reference we see to it is in a Kaiser report that does refer to some findings, and it's quite isolated. But I think the ultimate conclusion of the ALJ was that even if the fibromyalgia diagnosis is established, that there's no evidence of physical limitations that are in excess of the ones that he found, because as Sarchett tells us, fibromyalgia is not always a disabling impairment. Does that answer your question? Go ahead. He does mention the fibromyalgia. As I read it, he goes on and suggests that she can still work. I think he said she can do light work at some point, or sedentary work at least. Is that right, or am I misreading this? The ALJ's finding is that the claimant can perform the full range of light work. Let's talk about the doctor. The doctor. And which doctor? Excuse me. Dr. Johnson. Dr. Johnson used the term light work. Yes. He said she could do light work, right? Indeed. Now, there's a point raised in Appellant's reply brief about that, which I'll address if you'd like me to. But what I think is pertinent here is that there was plenty of other evidence that supported that conclusion. There was State agency doctor opinions. There were consulting examiner opinions from prior to Dr. Johnson's report. And then the claimant's previous work, of course, only required some really sedentary work with a sit-stand option. I'll point out as well that with regard to Dr. Maloof's State narrative report statement, that that issue was addressed in the appeals counsel's notice declining review, where they indicate clearly that Dr. Maloof is really very hesitantly supporting saying that the claimant might have a problem. Clearly, it was the ALJ's call to weigh the evidence here and make the conclusion. I think that's what he did. There was reference also to Dr. Morgenthaler. Although the ALJ doesn't mention it in his decision, there appear actually to have been two reports, and one of them is cited by Dr. Johnson in his report. The September 8th report is the one that suggests that there might have been a somatoform impairment, a somatoform diagnosis, I should say. The subsequent report, which Dr. Johnson refers to at excerpts of record, page 99, states that the, and I'll quote him, no basis for psychiatric injury in the appellant's case, in the applicant's case, insufficient evidence of diagnosis of mood, anxiety, or other serious psychiatric syndrome. Again, I would submit that the ALJ correctly evaluated Dr. Morgenthaler's opinion, and that it provides no basis for finding a mental impairment. And then, finally, returning again to Dr. Johnson, as you correctly point out, Dr. Johnson gave an opinion that the claimant could perform light work and then suggested that she couldn't perform her past work at Hewlett-Packard. The ALJ wasn't required to believe everything that Dr. Johnson said, and clearly did not believe she was incapable of returning to her past work. Also, it's clear from Dr. Johnson's report that the limitations he imposed on the claimant were based entirely upon the claimant's subjective symptoms, which the ALJ properly discounted. So clearly, the Court can infer that the ALJ was not persuaded by any part of Dr. Johnson's opinion. And then, finally, I probably should address the issue of whether or not the workers' compensation definition should have been addressed by the ALJ. In other words, Dr. Johnson's report was issued in the context of a workers' compensation evaluation. As the Court has stated in DeRogers and Macri, workers' compensation definitions of terms like medium and light work are not the same as Social Security definitions. Macri tells us that ALJs can draw reasonable inferences from such evidence. And it clearly seems to me what the ALJ has done here. There was nothing in Dr. Johnson's objective findings that would have suggested the claimant was unable to perform work as defined as light by the Social Security Administration's regulations. I believe that's all I have to say. Thank you. Roberts. Okay. Thank you very much. Mr. Sackett, you've saved some time. Sackett. Thank you. Several points I'd like to address. First, with regard to opposing counsel's opinion regarding the fibromyalgia, I'm hearing him suggest that the evidence came late in the game. Well, the reality is that the evidence of record predated the administrative law judge's decision by almost a year. Likewise, the records from Kaiser, to which counsel refers, were available for the administrative law judge's review, and they were also available for the appeals counsel. Now, when the appeals counsel reviewed the case, the argument regarding 12-month duration requirement simply goes away, because more than 12 months had gone by since Dr. Johnson had first rendered his opinion about the presence of fibromyalgia. Now, one of the problems I have is that the ALJ clearly did or was aware of fibromyalgia and such. Whether he was aware of it correctly is another question. I read your opening brief, and I read it a second time. I can't see any emphasis at all on fibromyalgia. All I see is an argument about mental problems. Sackett. That's correct, Your Honor. Roberts. Okay. So is that really before us, a whole new thing about the complexity of fibromyalgia and the physical problems it causes and such? Why are we even dealing with that since it wasn't raised in the opening brief? Sackett. Fibromyalgia is referenced throughout opposing counsel's brief, and I believe I mentioned it at some point in my brief. Am I suggesting that my so-called lead argument? Clearly not. That's not the case. Is it an issue that I think the Court should address? Absolutely, yes. One final point about the fibromyalgia. The administrative law judge never made a finding about it. I'm looking at page 158 of the excerpts of record, and the only impairment that he refers to is a back disorder. So by the fusion, I'm saying that he never made a finding on that. I'm sorry, counsel. I took you over your time with my question, but I'm sorry. Thank you. Thank you very much. Okay. Thank both of you for your arguments. The case of Fleming v. Barnhart is now submitted for decision.
judges: Fernandez, W. Fletcher, Rawlinson